UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY LOBDELL,

               Plaintiff,

v.

MASTERBRAND CABINETS, INC.

               Defendant.

_____/

CIVIL ACTION NO. 06-10948

DISTRICT JUDGE PAUL V. GADOLA

MAGISTRATE JUDGE DONALD A. SCHEER

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION**:

I recommend that Plaintiff's Motion for Partial Summary Judgment be granted in part. I further recommend that Defendant's Motion for Summary Judgment be denied.

**II.**    **REPORT:**

    **A.**    **Procedural History**

Plaintiff's Complaint was filed on March 2, 2006. Defendant filed its Answer on June 9, 2006. The parties submitted a Joint Discovery Plan, and the court entered a Scheduling Order on July 17, 2006. An Amended Scheduling Order was entered on January 30, 2007, and the parties stipulated to the extension of discovery and dispositive motion deadlines on April 30, 2007, and again on August 10, 2007.

Plaintiff filed a Motion for Partial Summary Judgment on December 11, 2007. Defendant filed its Motion for Summary Judgment on the following day. Both motions were referred to the magistrate judge on December 18, 2007. Plaintiff filed his Response to Defendant's Motion on January 2, 2008, and Defendant filed its Response to Plaintiff's

Motion on January 3, 2008. Reply Briefs were filed by both parties on January 14, 2008. The cross motions were brought on for hearing on February 20, 2008.

### B.    Applicable Law and Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986); Martin v. Ohio Turnpike Comm'n, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. Id. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. Id. At 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate.  Id.; Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial.  Anderson, 477 U.S. at 256.  To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted); see Celotex, 477 U.S. at 322-23; Matsushita, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury.  Lucas v. Leaseway Multi Transp. Serv., Inc., 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd 929 F.2d 701 (6th Cir. 1991).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find the plaintiff."  Anderson, 477 U.S. at 252; see Cox v. Ky. Dep't of Transp., 53 F.3d 146, 150 (6th Cir. 1995).

### C.  <u>Factual History</u>

Plaintiff seeks a judgment for damages in connection with injuries sustained by him on August 23, 2005, while he was delivering freight manufactured and shipped by Defendant.  Plaintiff was an experienced tractor-trailer operator and held commercial driver's licenses in the States of Michigan and New Mexico.  He had at least 13 years experience as a tractor-trailer operator hauling general commodity freight in box trailers.  From approximately 1999 through 2005, he delivered freight through various arrangements for Landstar Ranger, Inc. ("Landstar").  His truck driving experience included at least one incident in which cargo in a trailer shifted during transport.  During his service with Landstar, he consistently secured the cargo he transported inside the trailers, and he eventually began acquiring and carrying his own securement devices in 2002.  His experience included occasions on which he helped unload cargo from the trailers he transported, including the movement of the cargo to the tailgate of the trailer so that it could be off loaded by the party receiving the goods ("tailgating").  His experience with Landstar also included the delivery of freight through a series of destinations, at each of which a portion of the cargo would be off loaded.  After each stop, Plaintiff would secure the remainder of the load with load locks and restack the cargo, if necessary, prior to securing it.  Plaintiff was informed by Landstar that there was a code or law which made it mandatory that a load be secured inside a semi-trailer.

In August 2005, Plaintiff was an independent contractor working for Landstar.  He received his work assignments from Landstar through a computer located in his tractor.  Plaintiff was dispatched to pick up a load from the MasterBrand facility in Kinston, North Carolina.  The shipment, Number 7909, was a "live load," meaning that Plaintiff was to

bring an unloaded trailer to the facility for loading by MasterBrand employees while he waited. Plaintiff would then accept the load by reattaching his tractor to the loaded trailer for delivery of a portion of the freight to each of six retail outlets located in New Mexico and Arizona.

Lobdell arrived at the Kinston facility several hours before the 6:30 a.m. assigned time. He checked in with the shipping office and then slept in his tractor until he received a dock assignment. He positioned his empty trailer at the designated spot on the loading dock. He disconnected his tractor and drove it to a parking lot to await instructions to pick up the load. Plaintiff's trailer was equipped with a variety of securement equipment, including load locks, straps, pads and furniture dollies. He left that equipment in the trailer when he disconnected from it. Pursuant to a MasterBrand policy, drivers are not allowed to be in the dock area during the loading process. Lobdell testified that he went to the dock on one occasion because he was concerned about his personal securement equipment and whether MasterBrand loading personnel were going to use any of it. Plaintiff was informed that he was not allowed in the dock area, and "[t]hat they would take care of it. Everything would be moved." Defendant's shipping supervisor, Eric Ross, confirmed that drivers were prohibited from the dock area for safety reasons.

MasterBrand loaded the cargo "highest stop first," meaning that the product intended for delivery at the last stop, in Prescott, Arizona (Stop 6) was loaded first and located in the nose of the trailer, with the remaining delivery segments loaded in descending order down the remaining length of the vehicle. The individual boxes were marked with the number of the stop at which they were to be delivered. Although this was a "live load" (i.e. driver waits while trailer is loaded), which Defendant's shipping manager stated should be completed in two or three hours, it took over sixteen hours to finish the loading of Lobdell's trailer.

Upon completion of the loading by MasterBrand personnel, Lobdell received paperwork for the load from the shipping office. Returning to the loading dock, Plaintiff observed that the 53 foot trailer was filled 90% or more with boxes containing MasterBrand products. The trailer was "cubed," the load extending the length of the trailer, and "high and tight," meaning that the cargo was stacked from top to bottom and from side to side of the interior of the trailer. Plaintiff noted that some boxes appeared to be out of sequence, and he called the Landstar agent from whom he had received the load assignment to inform her of that fact. The shipping contract limited the number of pieces which could be out of sequence without triggering an extra shipping charge. The agent advised Lobdell to keep her informed as to the number of packages that were out of sequence so that MasterBrand could be charged accordingly. Plaintiff expressed his inclination to refuse the load, but the agent assured him that he would be paid for the extra work occasioned by the faulty sequencing of the cargo.

The bills of lading identified six delivery sites, three in New Mexico and three in Arizona. They also provided that the driver was to "tailgate" the load at each stop, and further that the driver was responsible for securing the load. Lobdell was also responsible for completing a load condition report, documenting any cargo shortages. Plaintiff learned that his securement equipment had been moved to the nose of the trailer, and that cargo was stacked behind it, rendering the securement equipment inaccessible. Lobdell located one or two load locks, apparently left by other drivers, on the MasterBrand loading dock. He used at least one of them to secure the load at the end of the trailer. Lobdell placed the load lock up against the boxes at a level of approximately five feet.

Plaintiff testified that he traveled primarily on the interstate highway system in making the deliveries. He had no recollection of any accident, sudden stop or start, or anything unusual during the trip. Nor did he recall any shifting of the load during transport. He did stop to open the doors and check the rear of the trailer, as a matter of good practice to insure that the load had not shifted. He noticed nothing different about the load, although he could only see the rearmost portion of it.

Upon arrival at the first delivery stop, in Las Vegas, New Mexico, Lobdell opened the trailer doors carefully to prevent injury in the event any of the load had shifted. He recalled nothing noteworthy about the condition of the load. He disengaged the load lock, located the boxes intended for that destination, and moved the freight from where it was secured inside the trailer to the rear of the vehicle so that the consignee could off load. The paperwork for Stop Number 1 reflects that 28 packages were unloaded, and that the delivery was three items short. When the unloading was finished, Lobdell repositioned the load lock where the boxes ended in the rear of the trailer, secured the doors and telephoned the shipping agent to express his concern that articles for the next delivery stop were intermingled with items for later deliveries. Lobdell does not recall speaking with the agent about any safety issue at the first stop.

Lobdell drove the remaining freight to the second delivery site, in Albuquerque, New Mexico. Because some boxes were loaded out of sequence, he was required to remove 14 boxes from the trailer before he could tailgate the second load segment. He was assisted in that task by agents of the consignee. Upon delivery of the second shipment, Plaintiff was assisted in reloading the 14 disordered boxes onto the trailer. He then restacked the boxes and secured them with a load lock. He closed the trailer doors and

departed for his next delivery.  Shipping documents for delivery Number 2 indicate that 121 items were delivered, and that the load was short 1 item.

Upon arrival at the third delivery site, also in Albuquerque, Plaintiff opened the trailer doors.  He looked to see if any cargo had shifted position, and then released the load lock.  Because he noticed that many items of cargo were out of the correct delivery order, Lobdell asked if anyone at the delivery site had a camera.  A woman inside the building did have a camera and took photographs of the load.  The photos were taken before the stop 3 delivery items were removed from the trailer.  The pictures were e-mailed to the shipping agent, but Plaintiff did not communicate with her regarding load safety.  After completing delivery number 3, Plaintiff resecured the load with the load lock.  He does not recall whether he restacked boxes, and he testified that he would have placed the load lock "where the boxes were stacked still."  Thirty three items were delivered at Stop Number 3.  Several boxes remained unstacked after the delivery.  Plaintiff closed the doors and departed.

Lobdell had a friend who lived in Albuquerque, not far from the third delivery location.  He stopped at his friend's house and stayed there for one night.  The cargo remained secured in the trailer during the entire time of the visit.  Plaintiff did not reopen the trailer doors prior to departing for delivery Stop Number 4.

Upon arrival at the fourth delivery site, Lobdell received instructions as to where he should position his trailer.  He backed into the designated position and opened the trailer doors.  He then performed paperwork in the tractor, as he had arrived prior to the opening of the business.  After approximately one half hour personnel arrived to begin unloading.  Lobdell proceeded to the rear of the trailer.  He checked the load as he removed the

securement equipment, and "everything looked fine." He placed the load lock on the floor and began moving boxes toward the rear of the trailer. Unstacked boxes and boxes of molding were removed first. At that point, Plaintiff began "unstacking from the front of the truck." After moving one stack of boxes, he began to pull down a box from the top of the stack to remove it to the floor and take it to the back of the vehicle. As he was pulling the box down, another box "fell from somewhere and hit [him] on the head and knocked [him] out." Lobdell does not know where the box that struck him came from, but testified that it was not on top of the box he was pulling down. Plaintiff was struck directly on the top of his head and fell to the floor of the trailer. Plaintiff completed the delivery of 148 items. There were 32 missing items at Stop 3.

Plaintiff completed the delivery of the freight at locations 5 and 6, without further mishap. He seeks damages for physical injuries sustained at Stop 4.

### D. <u>Analysis</u>

The parties agree that, under Michigan law, a plaintiff must establish four elements to state a *prima facie* case of negligence: 1) that the defendant owed the plaintiff a duty; 2) that the defendant breached that duty; 3) that the defendant's breach caused the plaintiff's harm, which includes (a) cause in fact and (b) legal, or proximate, cause; and 4) damages to the plaintiff. <u>Hunley v. Dupont Automotive</u>, 341 F.3d 491, 496 (6th Cir. 2003) (citing <u>Case v. Consumers Power Co.</u>, 463 Mich. 1, 615 N.W. 2nd 17, 20 n.6 (2000). Defendant's Brief, Page 9; Plaintiff's Response Brief, Page 9. MasterBrand contends that Plaintiff has failed to establish a *prima facie* case because he cannot establish elements one through three. Defendant asserts that Lobdell offers no evidence that MasterBrand owed him a duty of care to protect him from injury from falling boxes; or that any violation

of such duty was the proximate cause of his injury. Plaintiff's Motion for Partial Summary Judgment seeks a judgment in his favor on the same three issues.

## 1. **Duty**

Defendant argues that Plaintiff cannot establish MasterBrand's duty with respect to the safe loading of cargo into his trailer "because he cannot meet his burden of establishing that MasterBrand had exclusive control over the loading of the cargo." Defendant's Brief, Page 10. In fact, MasterBrand contends that "the undisputed evidence in this case clearly establishes that the carrier, Lobdell, was ultimately responsible for insuring the safety of the load." Id.

As a general matter, a commercial carrier's liability for injury or damage relating to its carriage of cargo is extensive. Nonetheless,

> [t]he carrier's extraordinary liability does not include responsibility for losses caused by the fault of the shipper. If the sole proximate cause of the loss is the shipper's negligence, misconduct, or even misfortune, the carrier is protected. Thus, where the damage is due to the shipper's inadequate packing, misdirection, or carelessness in loading, then the carrier is excused, if it was unaware of the fault.

22 Williston on Contracts §59: 32 (Fourth Ed.). Williston cites United States v. Savage Truck Line, Inc., 209 F.2d 442 (4th Cir. 1953). In that case, the U.S. Court of Appeals for the Fourth Circuit held that, while the primary duty as to the safe loading of property is upon the carrier, "[w]hen the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper." 209 F.2d 442 at 445. The court observed that the rule was not only followed in federal courts in cases arising under federal statutes, but by state courts as well.

In <u>Pierce v. Cub Cadett Corporation</u>, 875 F.2d 866 (6th Cir. 1989) (table), the Sixth Circuit quoted <u>Savage</u> in stating that "[t]he general rule is that [the shipper] becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper." 1989 WL 47446 at *4. The court ruled that the "shipper exception" to the general rule of carrier liability comported with Kentucky law.

In <u>Rector v. General Motors Corporation</u>, 963 F.2d 144 (6th Cir. 1992) the court determined that, if a carrier owed a duty to a consignee, it would follow that it would similarly owe a duty to its own employees. The Sixth Circuit recognized, however, that "it would be illogical to hold a carrier liable to a consignee of the goods where it was the *shipper* rather than the carrier, who had exclusive control over the manner in which the goods were loaded." 963 F.2d at 147. In <u>Rector</u>, however, the court imposed liability on the carrier based on undisputed evidence which showed that the carrier had loaded the cargo which ultimately occasioned injury to its driver. <u>Id</u>.

In <u>Johnston v. Sappi Fine Paper North America</u>, 2007 WL 1011914, this court (Judge Zatkoff) cited <u>Savage</u>, <u>Rector</u> and <u>Pierce</u> in determining that the <u>Savage</u> rule was applicable in a case governed by Michigan Law. The plaintiff, a truck driver, was injured in a rollover accident caused by the shifting of cargo loaded by the defendant shipper/manufacturer. While recognizing that federal regulations held a driver responsible to assure himself that his cargo was properly distributed, Judge Zatkoff determined that the <u>Savage</u> rule should be applied. He held that the rule does not demand abnormal scrutiny from carriers, but only a reasonable inspection. He denied summary judgment for the

shipper due to the absence of evidence that a reasonable inspection would have revealed the defect in the load.

In applying the Savage "shipper exception" to the facts of the instant case, I am satisfied that Plaintiff has established the element of duty. The uncontroverted evidence demonstrates that Lobdell played no role in the loading of MasterBrand's products into his vehicle at the Kinston facility. In fact, Lobdell was excluded from the shipping dock area until the loading process was completed. At that point, all six segments of the cargo were in place in the trailer. Plaintiff's securement equipment had been moved by MasterBrand employees to the nose of the trailer and rendered inaccessible to Lobdell by the volume of product loaded behind it. Defendant's own personnel confirmed that, at that point, Plaintiff was only capable of observing the rearmost extreme of the load. Any defect existing farther forward in the trailer would have been undetectable. As the court noted in Johnston v. Sappi, the Savage rule "does not demand abnormal scrutiny from carriers." All that is required of the carrier is a "reasonable inspection." Accordingly, I am satisfied that MasterBrand assumed the responsibility of loading its product in this instance, and thus incurred the duty to do so in a manner which would not cause Lobdell injury in the unloading process. While it is true that control of the vehicle and cargo was transferred to Lobdell, Defendant's duty was not thereby extinguished. Rather, it remained liable to Plaintiff to the extent that any negligence on its part caused harm to him. On the first element of Plaintiff's *prima facie* case, I conclude that Defendant is not entitled to summary judgment.

Plaintiff also seeks summary judgment on the duty element of his *prima facie* case. Considering the above discussed evidence, even in the light most favorable to Defendant,

I remain persuaded that MasterBrand undertook sole responsibility for the loading of its products into Plaintiff's trailer. In so doing, it assumed a duty of due care to avoid injury to Lobdell in transporting and delivering the cargo.

Defendant argues that Plaintiff's actions in tailgating and resecuring the load at three locations prior to his injury operates to relieve MasterBrand of its duty of care. I disagree. In my view, any role that Lobdell's conduct played in bringing about his accident may well affect his ability to establish the breach of duty and/or causation elements of his *prima facie* case, but they would not relieve MasterBrand of its duty to properly load the cargo initially. Plaintiff is entitled to partial summary judgment on the duty element.

### 2.    <u>Breach of Duty</u>

MasterBrand does not directly address the element of breach of duty, but simply relies upon its argument that no duty to Plaintiff existed at the time of his injury. Because I have found for Plaintiff on the duty element, it is necessary to consider the evidence relating to the discharge or failure of that duty.

Lobdell relies upon evidence that the cargo was "disorganized," and that numerous items were missing from the various shipments. He further relies upon his own testimony that he was struck on the head by a box during the unloading at Stop Number 4. Finally, Plaintiff relies upon the opinion of his expert that MasterBrand was responsible for the safety of the cargo, and that a falling box constituted a breach of that obligation.

MasterBrand has admitted that the process of loading Lobdell's trailer took much longer than it should have, and that the degree of disorganization of the cargo loaded by its employees was unacceptable. It counters, however, that a load of cargo out of proper sequence is not, by that reason alone, an unsafe cargo. The evidence indicates that the

six shipments were comprised of boxes of different sizes. Defendant contends that, in stacking dissimilar boxes, some measure of disorganization may be necessary to insure safe stacking. There is evidence to support that proposition. The evidence pertaining to the cargo carried by Plaintiff reflects that some measure of disorder was anticipated, and that Defendant would not be held financially responsible for any additional work occasioned by that fact. Plaintiff also testified that the agreement of the parties provided for financial reimbursement in the event he was required to contend with an excessively disorganized load. The agreement dealt only with extra work. There was no evidence that increased danger was considered. The evidence also reflects that Plaintiff was aware of a significant level of disorganization before he accepted the load, and that he discussed that issue with his shipping agent before agreeing to the assignment. If disorganization directly equated with dangerousness, Plaintiff would be chargeable with notice of the added risk.

It is a well settled principle of Michigan law that negligence of a Defendant must be proved and that an inference of negligence is not to be drawn simply from the fact of an accident. <u>Sewell v. Detroit United Railway</u>, 158 Mich. 407 (1909). Thus, the mere fact that Plaintiff may have been struck by a box originally loaded by Defendant does not, in itself, establish a breach of Defendant's duty of due care. The Michigan Supreme Court has held that "where a thing happens which would not ordinarily have occurred if due care had been used, the fact of such happening raises a presumption of negligence in someone." <u>Barnowsky v. Helson</u>, 89 Mich. 523 (1891). In the instant case, there is some evidence to indicate that the shifting of cargo may be expected to occur even in the absence of negligence. Lobdell testified that he had amassed a collection of securement equipment which he customarily employed to prevent or limit the shifting of cargo during transport. He

further testified to his habit of taking precautions in opening the trailer doors to prevent injury or damage resulting from shifting cargo. The employment of such precautions by Lobdell and others in the industry supports the reasonable inference that the risk of shifting/falling cargo is inherent in freight hauling. Indeed, it would be a strain to conclude that such devices are uniformly employed because negligent cargo loading is the standard of the industry.

While a Plaintiff bears the burden of proving Defendant's negligence by a preponderance of the evidence, direct evidence is not required to establish the issue. A Plaintiff must prove circumstances in regard to the alleged negligence of a Defendant consistent with his theory, but it is not required that the circumstances must preclude any other rational explanation. <u>Maki v. Isle Royale Copper Co.</u>, 180 Mich. 624 (1914). "A right of action . . . should never be denied an injured person 'where there is room for balancing the probabilities and for drawing reasonable inferences better supported upon one side than the other.'" <u>Indiana Lumberman's Mutual Insurance Co. v. Matthews Stores</u>, 349 Mich. 441, 450-51 (1957) (quoting <u>Maki</u>).

In the instant case, there is circumstantial evidence which, if believed in whole or in part, might reasonably be held to support any of several conclusions: a) that the accident occurred by reason of load shifting in transit, without any negligence; b) that the accident resulted from Defendant's negligence; c) that the accident resulted from Plaintiff's negligence; d) that the accident occurred as a result of negligence by Plaintiff and Defendant; and e) that Defendant's negligence, Plaintiff's negligence and load shift in transit all had a role in the accident.

Defendant manufactured the products which Plaintiff transported. MasterBrand maintained a policy of assuming responsibility for the loading of its goods into vehicles, and of excluding freight haulers from that activity. A fact finder could reasonably conclude that Defendant, with long experience in the handling of its products, should be adept at loading them safely. The time required for the loading of Lobdell's trailer was far beyond normal parameters. The evidence is undisputed that the level of disorganization in the loading of the cargo was unacceptable even by MasterBrand's standards. A fact finder could conclude that such delay and disorganization demonstrated a lack of attention and/or competence. Defendant's shipping department staff failed to employ the securement equipment provided by Plaintiff, or any other such equipment, despite its knowledge that the load would be delivered in six separate segments (each numbered by Defendant). MasterBrand employees received no formal training on securing loads within trailers. They disregarded Lobdell's comments regarding his securement equipment. Beyond that, they moved Lobdell's equipment to a location in the trailer which rendered it inaccessible to Plaintiff, even though they expected him to secure the load. They further denied Lobdell the opportunity to observe or supervise their loading process, thus preventing his inspection of the particular segment of the load which later caused his injury. That circumstantial evidence, combined with the Plaintiff's testimony that he experienced no sudden stops or other obvious causes of load shift enroute to his deliveries, and that he employed safe practices in the course of those deliveries, would support the inference of a latent defect in Part 4 of the combined load, resulting from negligence on MasterBrand's part.

At the same time, the evidence reflected that Lobdell had long experience in the hauling of freight in closed trailers. Plaintiff failed to remove his securement equipment

from the trailer prior to spotting at the loading dock, thus incurring the risk that it would be rendered inaccessible in the course of loading. There is no evidence that he insisted upon separate load segments being secured by load bars, nets or other safety gear. The evidence reflects that Lobdell accepted the load with knowledge of substantial disorder of the products, and of the lack of any securement gear employed to separate the constituent parts. Plaintiff himself secured the load at Kinston with a borrowed load lock. He had a second load bar available to him from MasterBrand, but apparently didn't use it. Lobdell further employed the borrowed load bar on three additional occasions prior to the accident, with no participation by MasterBrand personnel in the placement of that apparatus. It is undisputed that three portions of the load were safely removed from the truck in New Mexico with no sign of load shift or any related danger. He was able to drive more than 2000 miles and deliver three full segments of the load without incident or indication of load shift. He was manipulating a large box in the second stack of Load Number 4 when he was injured. He has no idea from where the box which caused his injury fell. Finally, Plaintiff concedes that two additional segments of the original were delivered without incident following his mishap. Viewing all of the above evidence, a reasonable fact finder could conclude that the entire combined load was safely placed on the trailer by MasterBrand personnel, only to be rendered unsafe solely by Lobdell's own activity in unloading and/or restacking and/or resecuring the product prior to the accident at Stop 4. In considering each party's motion for summary judgment, the court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. 60 Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). The court is not permitted, however, to judge the evidence or make findings of fact. Id. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. Id. At 1435.

17

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Based upon the foregoing analysis, I am satisfied that a genuine issue of material fact remains with respect to the issue of whether MasterBrand breached its duty of due care in loading the product in the first instance, and that neither party is entitled to summary judgment on that issue.

### 3. Proximate Cause

Defendant also challenges the sufficiency of Plaintiff's evidence as to the third element of his *prima facie* case, that is, that MasterBrand's conduct in loading the cargo into the trailer was the proximate cause of Lobdell's injury. Defendant's theory is that, because Plaintiff had exclusive control of the cargo following his departure from Kinston, he cannot meet his burden of establishing that . . . MasterBrand's action in loading the trailer in Kinston, . . . and not [Plaintiff's] subsequent ones, . . . was the proximate cause of his injury." Defendant's Brief, Page 15.

> Proximate cause is that which operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred. To find proximate cause, it must be determined that the connection between the wrongful conduct and the injury is of such a nature that it is socially and economically desirable to hold the wrongdoer liable. While the issue of proximate cause is usually a factual question to be decided by the jury, the trial court may dismiss a claim for lack of proximate cause when there is no issue of material fact.

Helmus v. Michigan Department of Transportation, 604 N.W. 2nd 793, 797 (Mich. Ct. App. 1999) (internal citations omitted).

"'The burden of establishing probable cause . . . always rests with the complaining party, and no presumption of it is created by the mere fact of an accident.'" <u>Skinner v. Square D Co.</u>, 445 Mich. 153, 162-63 (1994) (quoting <u>Howe v. Michigan CR Co.</u>, 236 Mich. 577, 583-84 (1926)). Proving proximate cause actually entails proof of two separate elements; (1) cause in fact and (2) legal cause, also known as "proximate cause". <u>Skinner</u>, 445 Mich. at 163 (citing <u>Moning v. Alfono</u>, 400 Mich. 425, 437 (1977)). MasterBrand contends that Lobdell's case must fail because he cannot meet the burden of establishing the cause in fact element of proximate cause.[1]

According to MasterBrand, Lobdell is attempting to establish that its allegedly negligent loading of the trailer proximately caused his injury solely on the conclusory proposition that, because Defendant originally loaded the trailer and, thereafter, the box fell, the loading must have been improperly performed. Defendant asserts that Plaintiff "has no evidence of probative value showing that any negligence of MasterBrand was the proximate cause of his injury." Defendant's Brief, Page 16. MasterBrand correctly cites <u>Skinner</u> for the proposition that, while a Plaintiff may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a Plaintiff's burden to effectively demonstrate causation. According to MasterBrand, Lobdell simply cannot establish that his injury would not have occurred but for negligence on the part of the Defendant's employees. MasterBrand characterizes Plaintiff's theory of causation as a mere possibility, or a proposition no more than equally probable as other possible causes. "[C]ausation theories that are mere possibilities or, at most, equally as probable as other

---

[1] MasterBrand does not challenge the "legal cause" issue, and I will not address it in this report.

theories do not justify denying a Defendant's motion for summary judgment." <u>Skinner</u>, 445 Mich. at 172-73.

In <u>Skinner v. Square D Company</u>, 445 Mich. 153 (1994), plaintiff's decedent was electrocuted in the course of his employment. No one was present in the shop immediately before the incident. Plaintiff's theory of liability was that a switch manufactured by the defendant had failed to operate properly. The Supreme Court of Michigan upheld the grant of a summary judgment for the defendant.

> While plaintiff's may show causation circumstantially, the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation: that there was no eyewitness to the accident does not always prevent the making of a possible issue of fact for the jury. But the burden of establishing proximate cause . . . always rests with the complaining party, and no presumption of it is created by the mere fact of an accident.

> To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation.

> *          *          *

> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deduceable from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. <u>On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such determination, notwithstanding the existence of other plausible theories with or without support in the evidence.</u>

445 Mich. at 480 (internal citations omitted) (emphasis added).

This court is obliged to view the evidence in the light most favorable to the non-moving party. As stated in connection with my analysis of the negligence element of

Plaintiff's *prima facie* case, I conclude that a reasonable jury could, on this record, conclude that Plaintiff's injury resulted from a latent defect created by Defendant's employees in the course of the initial loading of the cargo. The exceptionally long time required for the loading, together with the excessive disorganization of the boxes, the failure to heed Plaintiff's concerns about his securement equipment, the rendering of that equipment inaccessible to him and the exclusion of Lobdell from any meaningful opportunity to scrutinize the loading process, all in combination with his evidence regarding his own level of care and the lack of circumstances suggesting a load shift from other causes, would be sufficient to support a jury finding in his favor. The fact that the evidence could also support a verdict in the moving party's favor is of no moment in a summary judgment analysis.

> Raising alternative inferences . . . might be sufficient to defeat a motion for summary judgment. Because the court must draw all reasonable inferences in a light most favorable to the non-moving party, a non-moving party may be successful in pointing out what in the moving party's position is based on inferences and establishing equivalent inferences. If reasonable people could differ as to which of the possible inferences is the most plausible, the matter should not be decided on summary judgment.

3 ATLA's Litigating Tort Cases Section 31: 22.

Plaintiff also seeks summary judgment on the element of causation.[2] For the same reason stated immediately above, and based on the evidence summarized on pages 16-17 of this report, his motion for partial summary judgment on that element should also be denied. If the facts reflected in the pleadings, depositions, answers to interrogatories, and affidavits on a motion for summary judgment are susceptible to inferences supporting the

_____

[2] Plaintiff's argument appears to focus on the fourth ("damages") element of a *prima facie* case rather than the third ("causation") element. See Plaintiff's Brief, Pages 12-13.

position of the party opposing summary judgment, then a grant of summary judgment is improper, even if it appears that the relevant facts are undisputed. Parks v. LaFace Records, 329 F.3d 437, 444 (6th Cir.), cert. denied 540 U.S. 1074 (2003); see also Sadler v. Dimensions Health Care Corp., 378 Md 509, 836 A.2nd 655 (2003).

It is the rule in Michigan that the fact of an accident or injury may be taken into consideration along with other facts of the case. Negligence may be presumed on proof of an accident or injury coupled with evidence of some additional fact or circumstance, or surrounding facts and circumstances, sufficient to take the case out of the realm of conjecture and into that of legitimate inference, without resorting to speculation, conjecture, or guess. 3 A Mich. Pl & Pr Section 36.79 (2nd Edition); In Re: Millers Estate, 300 Mich. 703 (1942); Indiana Lumberman's Mut. Ins. Co. v. Matthew's Stores, Inc., 349 Mich. 441 (1957); Laxton v. Hatzel & Buehler, 142 F.2d 913 (6th Cir. 1944). In the case at bar, the rule may be employed by each party in defense of the motion for summary judgment filed by the other. It is possible that a fact finder at trial could find negligence on the part of both Plaintiff and Defendant. Michigan employs the comparative negligence doctrine which would serve to hold Defendant liable only to the percentage of damage caused by its negligence. Placek v. City of Sterling Heights, 405 Mich. 638 (1979).

For all of the above reasons, I recommend that Defendant's Motion for Summary Judgment be denied. I further recommend that Plaintiff's Motion for Partial Summary Judgment be granted with regard to the duty element of his *prima facie* case, but that it be denied in all other respects.

**III.**   **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Donald A. Scheer
                                        DONALD A. SCHEER
                                        UNITED STATES MAGISTRATE JUDGE
DATED: February 29, 2008
_____

**CERTIFICATE OF SERVICE**

        I hereby certify on February 29, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 29, 2008. **None.**

                                        s/Michael E. Lang
                                        Deputy Clerk to
                                        Magistrate Judge Donald A. Scheer
                                        (313) 234-5217